SUPERIOR COURT 
 
 TOMMY ROYAL AND BERNADETTE COSTA,[1] INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED INDIVIDUALS v. ANDREW METCALF,[2] JUDGMENT ACQUISITIONS UNLIMITED INC., AND MICHAEL ZOLA[3]

 
 Docket:
 2384CV02302-BLS2
 
 
 Dates:
 June 13, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDERS ON MOTIONS FOR SUMMARY JUDGMENT AND CLASS CERTIFICATION
 
 

 Tommy Royal claims that Andrew Metcalf and Judgment Acquisitions Unlimited Inc. (“JAU”) bring Massachusetts small claims debt collection actions against individuals without having chain-of-title evidence to prove they own the debt, and that they include prejudgment interest in the amounts they claim as unpaid principal. Mr. Royal asserts that these are unfair, deceptive, and unreasonable debt collection practices that violate the Massachusetts Fair Debt Collection Practices Act (G.L. c. 93, § 49) and the Massachusetts Consumer Protection Act (G.L. c. 93A). He seeks to represent a class and a subclass of similarly situated individuals. Metcalf and JAU have moved for summary judgment on Royal’s claims. Royal has moved for class certification and for summary judgment on his individual and class claims.
The Court will allow JAU’s motion for summary judgment in its favor because there is no evidence that JAU was involved in bringing the claim against Royal. As a result, Royal cannot seek relief against JAU on behalf of a class.
With respect to Royal’s personal claims against Metcalf, the Court will allow Royal’s motion for summary judgment and deny the cross-motion by Metcalf because the record establishes that (I) Metcalf never obtained, and has no evidence that he had any ability to obtain, documentation showing that Royal’s
 
--------------------------------------------
 
[1] All claims by Ms. Costa have been dismissed.
[2] The amended complaint says Royal is suing Metcalf both “individually” and “doing business as Judgment Acquisitions Unlimited.” There is no difference between the two. A person may acquire property and do business using a trade-name. E.g., Bridges v. Hart, 302 Mass. 239, 243 (1939). If they do so, they are personally bound by and liable for their actions. See Century Indem. Co. v. Bloom 325 Mass. 52, 55 (1949); Monti v. Wenkert, 947 A.2d 261, 281 (Conn. 2008).
[3] All claims against Mr. Zola have been dismissed.
 
                                                            -1-
 
credit card debt was included in a chain of assignments from the original creditor to the entity that purported to sell the account to Metcalf, (ii) Metcalf violated G.L. c. 93, § 49, and therefore committed a per se violation of c. 93A, by suing Royal to collect an alleged debt without being able to prove that he had any right to do so, (iii) Metcalf cannot prevail against Royal on an “account stated” theory because there is no evidence that they ever had a creditor-debtor relationship, (iv) Royal suffered injury that is compensable under G.L. c. 93A, § 9, and (v) Metcalf committed a further unfair and deceptive business practice by including contractual prejudgment interest in his claim.
The Court will allow Royal’s motion for class certification as to the claims against Metcalf, and also allow the motion for summary judgment in favor of the class members as to those claims, because the record indicates that Metcalf engaged in the same unfair and deceptive trade practices against all members of the proposed class and subclass that he also engaged in against Royal. The class members are entitled to declaratory and injunctive relief, statutory damages, and to recover their reasonable attorneys’ fees and litigation costs. The Court will deny these motions as to the claims against JAU.
This decision resolves all remaining claims, except for the award of reasonable attorneys’ fees and costs. The parties dismissed Bernadette Costa’s individual claims last week. Royal dismissed his claim against Michael Zola, an attorney who represented Metcalf and JAU in Massachusetts debt collection actions, a few days ago. The Court will direct the parties to confer about the recoverable amount of fees and costs and to file a proposed form of judgment consistent with the Court’s orders below.
1. Undisputed Facts. The summary judgment record shows that the following facts have either been stipulated to by the remaining parties or are otherwise not in dispute.
Andrew Metcalf owns and operates Judgment Acquisitions Unlimited, Inc. (“JAU”), which is a Massachusetts corporation. Metcalf and JAU both engage in the business of debt collection. When Metcalf does so individually, he uses the trade name “Judgment Acquisitions Unlimited” even if JAU is not involved. Metcalf and JAU use the same employees, offices, contractors, equipment, technology, and finances.
Metcalf and JAU acquire pools or tranches of consumer debts that are in default, after the original creditor has charged-off the account. They then seek to collect the alleged debts, typically by bringing small claims actions.
 
                                                            -2-
 
1.1. Facts Relevant to Tommy Royal’s Personal Claim. Let’s turn to sorting out the facts concerning the small claims debt collection action that Metcalf brough against Royal in the Boston Municipal Court.
1.1.1. May 2022 Purchase of Debt Pool—No Chain-of-Title Evidence. Metcalf (using the trade name Judgment Acquisitions Unlimited) entered into a Purchase and Sale Agreement on May 9, 2022, with Islandwide Consulting Group, which is based in Florida. Under this P&S Agreement, Islandwide sold to Metcalf a pool of “charged off consumer loan accounts.” This P&S provided that, once Islandwide received payment, it would deliver a file or files “containing a detailed listing of the Accounts to be sold.”
As part of this transaction, Islandwide provided Metcalf with an Assignment and Bill of Sale stating that Islandwide “sold, assigned, and transferred” its rights to an account in the name of Tommy Royal and with an account number ending in 1866. This document provides no information about this account.
As explained below, Metcalf never obtained any chain-of-title evidence showing that Islandwide had previously received an enforceable assignment of any rights to collect amounts that Royal owed on this account. Significantly Metcalf and JAU stipulated with respect to Royal’s credit card account that:
The only assignment containing an affidavit identifying the Royal account as part of the transferred pool is from Islandwide Consulting Group to Judgment Acquisitions Unlimited[.] None of the other assignments contain affidavits or otherwise identify the Royal account as being among the transferred accounts (emphasis added).
The P&S with Islandwide barred Metcalf from contacting the originator or other prior owners of any accounts that Islandwide allegedly assigned to Metcalf, unless Metcalf first obtained Islandwide’s “express written consent.” There is no evidence that Metcalf ever did so, and no evidence that Islandwide would have helped Metcalf obtain account-specific chain-of-title evidence if Metcalf had requested it.
The documentation that Metcalf obtained from Islandwide and that is relevant to sequential assignment of Royal’s credit card account is as follows.
The Bank of Missouri’s original account: Metcalf obtained documentation that Royal applied for credit through Aspen Dental in September 2019, and as a result The Bank of Missouri issued Royal a credit card and an Oregon corporation called “Genesis FS Card Services” managed an account for Royal with an account number ending in 1866. A fact finder could reasonably infer at
 
                                                            -3-
 
trial that this is the account for Royal that Islandwide was trying to assign to Metcalf.
Purported Sale to Genesis: Metcalf also obtained a “Second Amended and Restated Receivables Sale Agreement” between The Bank of Missouri and Genesis that was executed in February 2020. This contract states that The Bank of Missouri was selling to Genesis all Receivables associated with unspecified Loan Accounts. However, Metcalf never obtained any documentation showing that any receivables on Royal’s credit card account were among those sold to Genesis in this transaction. And Metcalf has not shown that he had any way to obtain such documentation.
Purported Sale to Brightwater: Metcalf obtained copies of two Bills of Sale indicating that on June 30, 2020, Genesis FS Card Services sold, assigned, and transferred “all right, title and interest” in and to certain accounts to an entity called Brightwater Investments One, LLC. But Metcalf has no evidence that Royal’s account was among those that Genesis sold and assigned to Brightwater. These Bills of Sale refer to four text files that identified the accounts sold and assigned to Brightwater. Metcalf did not obtain these text files and has presented no evidence that he had any way to obtain them. As a result, the summary judgment record establishes that Metcalf does not have and had no way to obtain any evidence that Royal’s account was listed in any of those files and assigned by Genesis to Brightwater.
Purported Sale to BW 34: In addition, Metcalf obtained an Assignment and Bill of Sale dated March 3, 2022, from Brightwater to BW 34 LLC. This document says that Brightwater was selling and assigning all of its rights, title, and interest in each account described in a separate Agreement with BW 34. But Metcalf did not obtain a copy of that separate Agreement, has no other evidence that Brightwater sold Royal’s account to BW 34, and had no way to obtain any such evidence.
Purported Sale to Islandwide: Metcalf also obtained a copy of separate Assignment and Bill of Sale, also executed on March 3, 2022, from BW 34, LLC, to Islandwide Consulting Group. This document says that it is carrying out the sale and assignment of all rights, title, and interest in each account described in a separate Agreement between BW 34 and Islandwide. But Metcalf never obtained a copy of that Agreement. He also did not obtain, had no way to obtain, and is unable to produce any other documentation showing that Tommy Royal’s account was among those sold by BW 34 to Islandwide.
 
                                                            -4-
 
1.1.2. Fall 2022 Collection Action. In October 2022, Metcalf (again using the trade name Judgment Acquisitions Unlimited) filed a small claims action against Royal in the Boston Municipal Court. The Statement of Small Claim alleged that Royal had “entered into a consumer credit agreement with Genesis Credit only to be used in Aspen Dental,” and that “Judgment Acquisitions Unlimited is now the owner of said debt.”
This Statement of Small Claim also asserted that Royal owed $794.18 in “Principal” plus $469.24 in “Interest” for a total of $1,263.42. The amount listed as “Principal” is the total amount charged-off by the original creditor, including both the unpaid debt plus all contractual interest that had accrued through the charge-off date. The amount listed as “Interest” was for interest accruing after the charge-off date, calculated by applying the contractual interest rate to the total charge-off amount, from the date of charge-off to the date the Statement of Small Claim was filed.
At his deposition, Royal testified that in response to a phone call he agreed to pay $50 toward what he was told he owed on his account in order “to keep from going to court.” It is undisputed that Royal paid Metcalf $50 by money order in December 2022. Royal testified that about a week after making that payment he received a letter telling him that he was required to appear in court.
Royal’s small claims matter was schedule for a magistrate’s  hearing  on March 2, 2023. Royal appeared for the hearing with his attorney. Neither Metcalf nor his attorney showed up. As a result, judgment entered in favor of Mr. Royal.
1.2. Facts Relevant to the Proposed Class Claims. From January 2020 through January 2025, Metcalf (using the trade name Judgment Acquisitions Unlimited) filed about 1200 small claims debt collection actions in the Massachusetts District Court and the Boston Municipal Court.
In each of these cases, Metcalf was seeking to collect on consumer debts that Metcalf believed he bought from another entity after they had been charged- off by the original creditor, as part of a pool or portfolio of charged-off consumer credit accounts.
1.2.1. Lack of Account-Specific Chain-of-Title Evidence. Metcalf buys debt portfolios that typically include anywhere from 15 to several hundred separate consumer credit accounts.
 
                                                            -5-
 
Metcalf testified under oath at his deposition that he “never” receives “account level assignments” when he buys a pool of debt. Metcalf is bound by things he admitted during his deposition testimony. See, e.g., Carey v. Lynn Ladder and Scaffolding Co., Inc., 427 Mass 1003 (1998) (rescript); York v. Zurich Scudder Investments, Inc., 66 Mass. App. Ct. 610, 619 (2006).
Metcalf’s admission that he never obtains documentation showing which individual accounts are included in an assignment of a particular pool of consumer debt was confirmed by the documentation that he produced during discovery. The Court ordered Metcalf to produce his complete files for a random selection of ten percent of the putative class members. None of those files contained any account-level documents or information showing that the account as to which Metcalf filed a statement of small claim was in fact included in the chain of pooled assignments of debt ultimately purchased by Metcalf.
Though Metcalf asserts in his summary judgment papers that he only buys “pools of debt [that] include account level documentation in support of the alleged debt,” none of the evidence that he cites supports that assertion. Metcalf cannot avoid summary judgment by making factual assertions that are inconsistent with his own deposition and are not supported by the evidence he cites. See, e.g., York, supra, at 611 (“a party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition” (quoting O'Brien v. Analog Devices, Inc., 34 Mass. App. Ct. 905, 906 [1993]); Bergendahl v. Massachusetts Elec. Co., 45 Mass. App. Ct. 715, 718-719, rev. denied, 428 Mass. 1111 (1998), cert. denied, 528 U.S. 929 (1999) (“mere assertions of the existence of disputed facts without evidentiary support cannot defeat [a] summary judgment motion”).
What Metcalf actually said during his deposition is that he only makes sure he receives “media” (such as invoices or contracts) sufficient to show that an entire portfolio of debt accounts has been transferred from an original creditor through to the entity offering to sell the portfolio. As discussed above in connection with Royal’s personal claims, documentation showing that an undifferentiated pool of debt has been assigned from one owner to another is not sufficient, standing alone, to identify which specific consumer debt accounts were included in the transaction. Metcalf testified that his business does not make any attempt to obtain account level assignment document unless a particular judge asks for it after reviewing a claim by Metcalf or JAU, or dismisses a claim because there is no chain-of-title documentation for that particular account.
 
                                                            -6-
 
1.2.2. Treatment of Pre-Charge-Off Interest. From January 2020, through mid- 2023, the Statements of Small Claim filed by Metcalf in Massachusetts were prepared the same way as the Statement of Small Claim filed against Royal. When Metcalf filed a small claim action during this period, he claimed as “Principal” an amount that consisted of the entire amount charged-off by the original creditor, including accrued interest through the charge-off date; he also claimed as “Interest” an additional amount calculated by Metcalf as the contractual interest due from the charge-off date to the date of filing.
2. Summary Judgment Motion as to Royal’s Personal Claims. The Court will next address the cross-motions for summary judgment as to Mr. Royal’s claims on his own behalf. If Metcalf and JAU were both entitled to summary judgment in their favor, then there would be no need to address the class certification motion. See Barbara F. v. Bristol Div. of Juvenile Court Dept., 432 Mass. 1024 (2000) (rescript) (“If an individual ‘may not maintain the action on [his or her] own behalf, he or she may not seek relief on behalf of a class.’ ”) (quoting Doe v. The Governor, 381 Mass. 702, 704-705 [1980]). But the record establishes that, though JAU was not involved in bring the small claims action against Royal, Metcalf did so in a manner that violated G.L. c. 93A and Royal is therefore entitled to summary judgment in his favor on his claims against Metcalf.
2.1. Royal’s Claims against JAU. Royal has no evidence that JAU rather than Metcalf filed the small claims action against him. JAU is therefore entitled to summary judgment in its favor. See generally Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715 (1991) (“If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.”) (quoting Celotex Corp. v. Catret, 477 U.S. 317, 328 (1986) [White, J., concurring]).
The Statement of Small Claim that Metcalf filed against Royal said that it was being filed on behalf of “Judgment Acquisitions Unlimited.” It did not state that it was being filed on behalf of the corporate entity Judgment Acquisitions Unlimited, Inc. (“JAU”).
That Metcalf used the trade name “Judgment Acquisitions Unlimited” when he sued Royal does not establish that the action was brought on behalf of the corporate entity JAU. “[A]n individual may adopt a trade-name under which business can be transacted, actions instituted, or defended, and the title to property acquired and transmitted.” Bridges v. Hart, 302 Mass. 239, 243 (1939),
quoting Crompton v. Williams, 216 Mass. 184, 187 (1913).
 
                                                            -7-
 
Metcalf testified that JAU never files small claims actions in Massachusetts. Royal contends that is not true. He points to evidence that case files for 19 of the 120 sample account records provided in discovery contain documents listing JAU as the assignee of a pool of accounts. Though this may suggest that some of the small claims actions filed in Massachusetts for “Judge Acquisitions Unlimited” could have been filed on behalf of JAU, Royal is unable to muster any evidence to contradict Metcalf’s testimony that Metcalf, and not JAU, brought the small claims action against Royal. As noted above, the bill of sale under which Metcalf says he acquired rights to collect on Royal’s credit card account was made out to “Judgment Acquisitions Unlimited,” not to JAU.
2.2. Royal’s Debt Collection Claim against Metcalf. Royal is entitled to summary judgment in his favor on Royal’s individual claim against Metcalf in count I of the amended complaint. The summary judgment record establishes that: (I) Metcalf could not and cannot meet his burden of proving that he purchased Royal’s credit card debt through a valid chain of title; (ii) Metcalf’s attempt to collect Royal’s alleged debt without such proof of ownership, or any ability to obtain it, was unfair, deceptive, and unreasonable in violation of G.L. c. 93, § 49, and therefore also violated G.L. c. 93A; (iii) Metcalf was not entitled to collect anything from Royal on the theory that Royal had agreed to an “account stated;” and (iv)  Royal suffered injuries that are compensable under G.L. c. 93A, § 9.
2.2.1. No Proof of Title. If Metcalf wishes to collect on an unpaid credit card or other debt in small claims court, he bears the burden of proving that the specific debt at issue was in fact assigned to him. See Portfolio Recovery Assocs., LLC v. Duvall,   P.3d   , 2025 WL 1479747, at *20-*22 (Alaska May 23, 2025); Norfolk Fin. Corp. v. Mazard, 2009 Mass. App. Div. 255, 257, 2009 WL 3844481, at *3–*4 (Mass. App. Div. Nov. 12, 2009) (Brennan, J.).
By analogy, if someone buys a pool of mortgage loans, they cannot foreclose on any particular mortgage without proving that they hold the mortgage by providing “a complete chain of assignments” linking the foreclosing entity directly or indirectly to the record holder of the mortgage, together with “a schedule of the pooled mortgage loans” or other account-specific evidence “that clearly and specifically identifies the mortgage at issue as among those assigned.” U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 651 (2011).
Much the same is true in a case like this one, where someone buys a pool of charged-off consumer credit accounts rather than a pool of mortgage loans.
 
                                                            -8-
 
“In cases that involve multiple assignments, there must be proof of the validity of assignment every time the rights to collect the debt are transferred. In other words, every link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing.” CACH, LLC v. Askew, 358 S.W.3d 58, 62 (Mo. 2012) (en banc) (internal citation omitted); accord, e.g., Kimhow Corp. v. Rawji, 2012 Mass. App. Div. 48, 2012 WL 983187, at *1–*2 (Mass. App. Div. March 19, 2012) (Coven, J.); Mazard, supra; Portfolio Recovery Assocs., 2025 WL 1479747, at *21–*22; New Century Financial Services,  Inc.  v. Oughla,  98 A.3d 583, 591 & 594–596 (N.J. Super. Ct. App. Div. 2014) (required proof may be through business records; separate affidavit from each transferor not required); Credit Corp. Sols. v. Christie, 63 Misc. 3d 1207(A), 114 N.Y.S.3d 193 (N.Y. Civ. Ct. March 22, 2019); Converging Capital, LLC v. Matthews, 2018 WL 1611586, at *2–*3 (Tenn. Ct. App. April 3, 2018).
“Merely demonstrating that multiple, unspecified debts or accounts were transferred” from an original creditor, through intermediaries, and to a final debt collector “is insufficient to make a prima facie showing that” the final collector “is the real party in interest and has standing” to bring an action to collect a debt owed on a particular account. Gemini Capital Group, LLC v. Jones, 904 N.W.2d 131, 137 (Wis. App. 2017); accord Portfolio Recovery Assocs., 2025 WL 1479747, at *21–*22; Yates v. CACV of Colorado, LLC, 693 S.E.2d 629, 635 (Ga. Ct. App. 2010); Kimhow Corp., supra; Mazard, supra; Arrow Fin. Svcs., LLC v. Guiliani, 32 A.3d 1055, 1058 (Me. 2011); Oughla, supra (proof that debtor’s “account was among the charged-off accounts included in the assignments” is require); Kenny v. Portfolio Recovery Assocs., LLC, 464 S.W.3d 29, 33–34 (Tex. App. 2015); Unifund CCR Assignee of Providian v. Ayhan, 146 Wash.App. 1026, 2008 WL 2974639, at *7 (Wash. Ct. App. Aug. 5, 2008).
As discussed above in § 1.1 of this decision, Metcalf never obtained evidence that Royal’s credit card account was included in each of the five assignments of rights that Metcalf contends led to him acquiring the right to bring a debt collection action against Royal. Although Metcalf has some evidence suggesting that Islandwide Consulting Group thought it was assigning Royal’s account to Metcalf in 2022, there is no evidence that the account had first been assigned from The Bank of Missouri to Genesis FS Card Services, then assigned to Brightwater Investments One, LLC, then assigned to BW 34 LLC, and then assigned yet again to Islandwide.
 
                                                            -9-
 
Furthermore, Metcalf has mustered no proof that he had any ability to obtain evidence showing that Royal’s account was among those transferred over and over from The Bank of Missouri through Islandwide and to Metcalf. The lack of any such evidence helps to demonstrate that Royal is entitled to judgment in his favor. “The burden on the moving party [at summary judgment] may be discharged by showing that there is an absence of evidence to support the non- moving party’s case.” Carroll v. Select Bd. of Norwell, 493 Mass. 178, 188 (2024), quoting Kourouvacilis, 410 Mass. 711.
2.2.2. Per Se Violation of G.L. c. 93A. The summary judgment record establishes that Metcalf violated the Massachusetts Debt Collection Act by filing suit against Royal without any ability to prove that Metcalf had the right to collect on Royal’s account. That constitutes a per se violation of G.L. c. 93A.
Massachusetts law makes it unlawful for a creditor to collect a debt “in an unfair, deceptive or unreasonable manner.” G.L. c. 93, § 49. For the purposes of this statute, a “creditor” includes any person “engaged in collecting a debt owed or alleged to be owed to him.” 940 C.M.R. § 7.03. The statute therefore applies to Metcalf, even though he cannot prove that Royal’s credit card account was assigned to him, because Metcalf alleged that he had the right to collect on Royal’s credit card account and tried to do so.
Any violation of G.L. c. 93, § 49, “shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A.” See G.L. c. 93, § 49. In other words, any violation of § 49 is an automatic, per se violation of c. 93A. Cf. Anketell v. Office of Consumer Affairs and Bus. Reg., 101 Mass. App. Ct. 628, 637 (2022)  (identical  language  in G.L.  c.  142A,  § 7,  makes any  violation  of c. 142A “a per se violation of c. 93A”); Layes v. RHP Properties, Inc., 94 Mass. App. Ct. 804, 810 (2019) (same as to identical language in G.L. c. 140, § 32L[7]).
Royal may therefore prove his claims under c. 93A by showing that Metcalf attempted to collect an alleged debt in an unfair, deceptive, or unreasonable manner, “without the need of showing the act was otherwise ‘unfair or deceptive’ or occurred in ‘trade or commerce’ ” within the meaning of c. 93A. See Midland Funding, LLC v. Juba, 2017 Mass. App. Div. 31, 2017 WL 716331, at *3 (Mass. App. Div. Feb. 15, 2017) (Hand, J.), quoting McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 117–118 (1st Cir. 2014).
The summary judgment record establishes that Metcalf engaged in unfair, deceptive, and unreasonable debt collection efforts by filing suit to collect on Royal’s credit card account without having, or being able to readily obtain,
 
                                                            -10-
 
chain-of-title proof that Royal’s account had been assigned from The Bank of Missouri through a series of intermediaries to Metcalf.
Filing suit to collect on a consumer debt without having or being able to readily obtain evidence that the plaintiff own or has any right to collect on a debt, as Metcalf did in this case, is unfair and deceptive. See Portfolio Recovery Assocs., 2025 WL 1479747, at *26–*28 (affirming summary judgment for plaintiff against creditor); accord, e.g., Brown v. Transworld Systems Inc., 646 F.Supp.3d 1328, 1342 (W.D. Wash. 2022); McCrobie v. Palisades Acquisition XVI, LLC, 359 F.Supp.3d 239, 251 (W.D.N.Y. 2019). Doing so is unfair because it will tend either to pressure the consumer to accept an unjustified settlement or force them to bear “the expense and headache of litigation.” Portfolio Recovery Assocs., supra, at *27. Doing so is deceptive because it will tend to “mislead[] the consumer into believing that the debt collector has the ability to prove its claim.” Id. “[R]equiring a consumer to defend against a claim which ultimately cannot be proven in court,” and which the debt collector should have known cannot be proven, is patently unfair as a matter of law. Id. at 28.
This is clear under Massachusetts law as well. By regulation, making any “false, deceptive, or misleading representation … in connection with the collection of any debt” constitutes a violation of the Debt Collection Act. See 940 C.M.R. § 7.07(8).
When Metcalf filed his Statement of Small Claim against Royal, he asserted that “Judgment Acquisitions Unlimited is now the owner” of Royal’s credit card debt. But that was false. The summary judgment record establishes that Metcalf had no evidence that prior assignments in the alleged chain of title included Royal’s account, and that Metcalf was contractually barred from seeking such evidence from the prior assignors.
It was unfair, deceptive, and unreasonable as a matter of law for Metcalf to commence a small claims action asserting that he owned Royal’s account without any evidence, or any realistic ability to obtain any evidence, to back that up. Royal is therefore entitled to summary judgment on count I.  Cf. Layes v. RHP Properties, Inc., 95 Mass. App. Ct. 804, 812–813 (2019) (where material facts are not in dispute, trial court may be able to determine as a matter of law that business practices were unreasonable, unfair, and therefore violate c. 93A).
2.2.3. “Account Stated” Defense. Metcalf contends that his lack of proof that Royal’s account was assigned by the original creditor and all intermediary assignees is irrelevant because Royal paid $50 to Metcalf on his account and as
 
                                                            -11-
 
a result became liable to pay to the balance to Metcalf on an “account stated” theory. Not so.
“An ‘account stated’ is an acknowledgment of the existing condition of liability between the parties” (emphasis added). Bucklin v. Nat'l Shawmut Bank of Bos., 355 Mass. 338, 341 (1969), quoting Chace v. Trafford, 116 Mass. 529, 532 (1875). In other words, “[a]n account stated ‘supposes a rendering of the account by the party who is the creditor, with a balance struck, and an assent to that balance, expressed or implied’ “ (emphasis added). Davis v. Arnold, 267 Mass. 103, 111 (1929), quoting Bass v. Bass, 25 Mass. (8 Pick.) 187, 198 (1829).
An account stated must therefore be based on a pre-existing creditor-debtor relationship between the parties, and not on liability owed by or to some third party. An action for an account stated may not be used “to enforce a promise to pay the debt of another.” See Cavanaugh Bros. Horse Co. v. Gaston, 255 Mass. 587, 590 (1926). Similarly, implicit acknowledgement of a debt owed to a third party also cannot create an account stated liability. For example, where a defendant entered into a lease with a third party, the lease was never assigned to the plaintiff, but the defendant nonetheless made lease payments to the plaintiff, that payment could not create any binding obligation under an “account stated” theory because there was no pre-existing liability to the plaintiff. See General Elec. Capital Corp. v. MHPG, Inc., Worc. Super. Ct. no. 030833B, 2006 WL 2560314, at *7 (Mass. Super. July 27, 2006).
“An account stated ‘cannot be made the instrument to create a liability where none before existed, but only determines the amount of a debt where liability exists.’ “ Bucklin, 355 Mass. at 341, quoting Chase v. Chase, 191 Mass. 556, 562 (1906). Thus, even where a defendant repays part of an alleged debt, liability cannot be imposed on an account stated basis if “there was no ‘existing condition of liability’ to be acknowledged.” Id., quoting Chace v. Trafford, supra.
Since Metcalf never had a creditor-debtor relationship with Royal, and cannot prove that he acquired any right to collect on Royal’s account, Royal’s decision to pay Metcalf $50 in an attempt to avoid being hauled into court did not establish an “account stated.”
2.2.4. Injury. Metcalf’s assertion that Royal’s claims fail because he cannot show that he “suffered a loss of money or property” as a result of Metcalf’s conduct is without merit. Businesses that seek relief under c. 93A, § 11, must show that they have lost money or property. See, e.g., Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468 (1995) (“loss of money or property”
 
                                                            -12-
 
is necessary element of claim under § 11). But in 1979 the Legislature eliminated that requirement for lawsuits under c. 93A, § 9, by or on behalf of individual consumers. See Hershenow v. Enterprise Rent-a-Car Company of  Boston,  Inc.,  445 Mass. 790, 797–798 (2006).
The 1979 statutory amendments “clarified that the Legislature intended to permit recovery” for individual consumers under § 9 “when an unfair or deceptive act caused a personal injury loss such as emotional distress, even if the consumer lost no ‘money’ or ‘property.’ ” Id. at 798. Relief is also available under § 9 where the claimed injury is “the invasion of a legally protected interest.” Id. at 800, quoting Leardi v. Brown, 394 Mass. 151, 159 (1985) (landlord violated c. 93A by having tenants sign residential leases with provision falsely implying they were waiving right to habitable housing).
Furthermore, § 9 “provides for recovery ‘of actual damages or twenty-five dollars, whichever is greater.’ ” Leardi, supra, at 160, quoting G.L. c. 93A, § 9(3). “Accordingly, under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded, … the statute provides for the recovery of minimum damages in the amount of $25.” Id.
Royal has established that he has suffered an invasion of a legally protected interest. Plus, most anyone compelled to answer a small claim action will have suffered some amount of emotional distress. Both of these kinds of injury are compensable under G.L. c. 93A, § 9. 
2.3. Royal’s Pre-Judgment Interest Claim against Metcalf. Let’s shift focus to count II. The summary judgment record also establishes that Metcalf violated G.L. c. 93A, § 49, and G.L. c. 93A by the way that he included pre-judgment interest in his Statement of Small Claim against Royal.
As explained above, Metcalf sought to recover amounts that he labelled as “Principal” and “Interest” from Royal. The “Principal” amount actually included contractual pre-judgment interest through the date that the original creditor charged-off the debt; that fact was not disclosed. The “Interest” amount was Metcalf’s calculation of pre-judgment interest from the charge-off date through the date of filing. He calculated the “Interest” figure by applying the contractual interest rate to the entire “Principal” figure, including the pre- charge-off interest. Once again, Metcalf did not disclose this.
It was unreasonable for Metcalf to include any interest in his statement. Court rules provide that a small claim plaintiff shall state the amounts being sought,
 
                                                            -13-
 
“exclusive of any prejudgment interest being sought from the court pursuant to G.L. c. 231, §§ 6B or 6C.” See Uniform Small Claim Rule 2(a). In a contract action like this, prejudgment interest is awarded under § 6C whether the plaintiff is seeking interest based on a contract rate or based on the statutory rate. See G.L. c. 231, § 6C.
Furthermore, it was unfair and deceptive for Metcalf to seek separate amounts for “Principal” and “Interest” without disclosing that the “Principal” amount also included part of the pre-judgment interest that Metcalf was seeking to recover. “Including prejudgment interest in the total amount” labelled Principal, without disclosing that fact, “could mislead the consumer as to the amount of the debt actually owed, which in turn could make it difficult for the consumer to respond effectively to the Statement of Claim.” Lannan v. Levy & White, 186 F. Supp. 3d 77, 92 (D. Mass. 2016) (Talwani, J.).
Calculating post-charge-off interest on top of pre-charge-off interest was permissible in Royal’s case, however. The Genesis Credit Account Agreement that apparently set the terms and conditions of Royal’s credit card account provides that interest charges on any unpaid balance would compound.
2.4. Willful and Knowing Violations. The summary judgment record also establishes that Metcalf’s violations of G.L. c. 93, § 94, and per se violations of G.L. c. 93A with respect to Royal were willful and knowing. Metcalf knew full well that he did not have and had no way to obtain account-specific chain of title documentation. And Metcalf knew that the statements of small claim he filed up through mid-2023 included claims for pre-judgment interests and included part of that interest in a figure labelled “Principal” without disclosing that it included interest.
3. Royal’s Class Certification Motion. Mr. Royal has asked the Court to certify a class with respect to his debt collection claim in count I of the amended complaint and a subclass with respect to his pre-judgment interest claim in count II. The debt collection class would consist of all persons sued by Metcalf or JAU in a small claim session in Massachusetts from January 2020 to the present on a debt allegedly bought by Metcalf or JAU. The pre-judgment interest subclass would consist of anyone among that same group as to whom Metcalf or JAU sought to recover “Principal” that included pre-charge-off interest plus post-charge-off interest labelled “Interest.”
The Court will deny the class certification motion with respect to JAU. Since the Court has granted summary judgment in favor of JAU, Inc., on Royal’s
 
                                                            -14-
 
individual claims, Royal may no longer seek class certification to press claims against that entity. See Barbara F., 432 Mass. 1024.
However, the Court will exercise its broad discretion to certify the proposed class and subclass with respect to the claims against Metcalf.
3.1. Legal Standards. Certification of a class action with respect to claims under
G.L. c. 93A is appropriate if the named plaintiff can “show that the putative class members suffered ‘similar,’ although not necessarily identical, injuries as a result of the defendant’s unfair or deceptive conduct.” Bellermann v. Fitchburg Gas & Elec. Light Co., 470 Mass. 43, 53 (2014), quoting G.L. c. 93A, § 9(2) & § 11. In addition, § 9(2) —which governs class actions on behalf of individual consumers who are not themselves engaged in trade or commerce—"requires satisfaction of the same elements of numerosity, commonality, typicality, and adequacy of representation as are required by Mass. R. Civ. P. 23(a).” Moelis v. Berkshire Life Inc. Co., 451 Mass. 483, 489 (2008).
“Unlike rule 23, however, § 9(2) does not require that common issues predominate over individual ones, or that a class action be superior to other methods of litigation.” Id. at 489–490. A court nonetheless “has discretion to consider issues of predominance and superiority” in deciding whether to certify a class claim under c. 93A. Id. at 490.
“[W]hen the judge is deciding a [class] certification request under § 9(2) [of G.L. c. 93A], the judge must bear in mind [that there is] ‘ “a pressing need for an effective private remedy” for consumers, and that “traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice.” ’ ” Aspinall v. Philip Morris Cos. Inc., 442 Mass. 381, 391- 392 (2004), quoting Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605 (1985). “The right to a class action in a consumer protection case is of particular importance where, as here, aggregation of small claims is likely the only realistic option for pursuing a claim.” Feeney v. Dell Inc., 454 Mass. 192, 202 (2009).
“[A] party moving for class certification need only provide ‘information sufficient to enable the motion judge to form a reasonable judgment’ that certification requirements are met.” Aspinall, 442 Mass. at 391–392, quoting Weld v. Glaxo Wellcome Inc., 434 Mass. 81, 87 (2001). Whether Plaintiffs can ultimately prevail is not a relevant consideration in deciding whether class certification is appropriate. See Weld, 434 Mass. at 85 (it would be an abuse of discretion to deny class status “by imposing, at the certification stage, the burden of proof that will be required of the plaintiffs at trial”). “[N]either the
 
                                                            -15-
 
possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule.” Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 363 (2008), quoting Weld, supra, at 87.
3.2. Debt Collection Class. The Court concludes that it is appropriate to certify the proposed “debt collection” class with respect to the claim against Metcalf in count I of the amended complaint.
Royal has shown that the proposed class members are all similarly situated and suffered similar injuries. Though Royal need not prove his claims on the merits in order to obtain class certification, here the summary judgment record establishes that Metcalf filed small claims actions against every class member without having or being able to obtain proof that he owned and had a right to collect their debt.
For essentially the same reason, the commonality requirement is satisfied. This requirement is met when the class members “have a common interest in the subject-matter of the suit” that “arise[s] out of a common relationship to a definite wrong.” Godfrey v. Massachusetts Med. Serv., 359 Mass. 610, 620 (1971), quoting Spear v. H.V. Greene Co., 246 Mass. 259, 266 (1923). The class members all had the same relationship with Metcalf and share a common interest in resolution of the debt collection claim.
The Court finds that the requirement of typicality is also satisfied here. “Typicality is established when there is ‘a sufficient relationship … between the injury to the named plaintiff and the conduct affecting the class,’ and the claims of the named plaintiff[s] and those of the class ‘are based on the same legal theory.’ ” Weld, 434 Mass. at 87, quoting 1 H. Newberg, Class Actions § 3.13, at 3–76 (3d ed. 1992). “A plaintiff representative normally satisfies the typicality requirement with ‘an allegation that the defendant acted consistently toward the [representative and the] members of a putative class” (bracketed material in original). Id., quoting Fletcher, 394 Mass. at 606. For the reasons discussed above, these standards are satisfied here.
The proposed class will consist of roughly 1200 class members. This easily satisfies the numerosity requirement. Cf. Gammella v. P.F. Chang’s China Bistro, Inc., 482 Mass. 1, 12 (2019) (reversible error to deny class certification for lack of numerosity where class included “hundreds of employees”); Layes v. RHP
 
                                                            -16-
 
Properties, Inc., 95 Mass. App. Ct. 804, 823 (2019). (“a class of 240 members is sufficiently numerous to qualify for class treatment”).
Finally, the Court finds that Mr. Royal is an adequate class representative and that his attorneys will be more than adequate class counsel. Mr. Royal has been very involved in this case, including by reviewing pleadings, meeting with counsel, and being deposed. His attorneys have substantial experience consumer class action litigation, have often served as class counsel such cases, and have diligently and effectively prosecuted this action.
3.3. Pre-Judgment Interest Subclass. The Court also concludes that it is appropriate to certify the proposed “pre-judgment interest” subclass with respect to the claim against Metcalf in count II of the amended complaint.
The evidence suggest that there will hundreds of members in this subclass, which easily satisfies the numerosity requirement. Plaintiffs’’ counsel was able to review Metcalf’s complete files for ten percent of the potential class members. Out of that sample, the statements of small claim for 82 people included claims for prejudgment interest. As discussed above in § 1.2.2 of this decision, Metcalf testified that he prepared all such claims in the same way, including pre-charge-off interest together with the unpaid principal amount in a single figure labelled “Principal.” Extrapolating from this sample, there are probably at least 800 members of this subclass.
All members of this subclass have suffered similar injuries due to similar conduct by Metcalf, the subclass members share a common interest in the claim asserted in count II of the amended complaint, and the injury that Royal claims in count II is typical of all members of the subclass.
Finally, the requirement of adequacy of representation is met for the reasons discussed above.
4. Royal’s Summary Judgment Motion for the Class and Subclass. Finally, let’s turn to Royal’s motion for summary judgment on behalf of all Class and Subclass Members. The summary judgment record establishes that the Debt Collection Class members and the Pre-Judgment Interest Subclass members are all entitled to judgment in their favor as a matter of law.
4.1. Liability. First, Metcalf is liable to all Debt Collection Class members for filing small claims actions against them when Metcalf knew he did not have and likely could not obtain evidence that the individual’s account had ever been assigned to Metcalf for collection.
 
                                                            -17-
 
As discussed above in § 1.2.1 of this decision, Metcalf testified under oath that he “never” receives “account level assignments” when he buys a pool of debt. In other words, Metcalf conceded that he never obtains documentation showing which individual accounts are included in an assignment of a particular pool of consumer debt. Even after being sued, Metcalf could not come up with account-specific chain-of-title evidence for Royal’s account, or for any of the 120 accounts as to which Metcalf provided his complete files.
Nor did Metcalf present any other evidence suggesting that, when he filed each small claims action, he had any ability to procure chain-of-title evidence to prove that he owned and had the right to collect on that account. As noted above, Plaintiff can meet their burden in seeking summary judgment “by showing that there is an absence of evidence to support the non-moving party's case.” Carroll, 493 Mass. at 188, quoting Kourouvacilis, 410 Mass. 711.
For the reasons discussed above in §§ 2.2.1 and 2.2.2, Metcalf’s filing of small claims actions against the Class Members to collect on consumer debts without having evidence, and without being able to readily obtain evidence, that Metcalf owned or had any right to collect on a debt was unfair and deceptive, violated the Massachusetts Fair Debt Collections Practices Act, and constituted a per se violation of G.L. c. 93A with respect to every Class Member.
Second, Metcalf is independently liable to each Pre-Judgment Interest Subclass member. Metcalf conceded that his uniform practice during the time period covered by this class definition was to include pre-judgment interest in each statement of small claim that he filed, and to combine unpaid principal and pre-charge-off contractual interest in a single figure labelled “Principal” without disclosing that it included interest. Both of those practices were a further violation of G.L. c. 93, § 49, and therefore were per se violations of c. 93A, as discussed above in § 2.3.
Finally, as discussed above in § 2.4, the summary judgment record also establishes that Metcalf’s violations of G.L. c. 93, § 94, and per se violations of G.L. c. 93A were willful and knowing. That is as true of the other class and subclass members as it is with respect to Royal individually. Metcalf knew that he did not have and could not obtain account-specific chain-of-title documentation. And he knew that the statements of small claim he filed until mid-2023 included pre-judgment interests within a figure labelled “Principal” without disclosing that it included interest.
 
                                                            -18-
 
4.2. Remedies. The Court concludes, in the exercise of its discretion, that the following relief is justified and appropriate to remedy Metcalf’s violations under count I of the amended complaint. As plaintiffs’ counsel noted during oral argument, there is no need for the Court to address count II separately with respect to remedies other than declaratory relief, because Plaintiffs are seeking the same relief as to both claims against Metcalf.
First, the Class Members are entitled to declaratory relief stating plainly the manner in which Metcalf engaged in unfair debt collection practices.[4]
Second, the Class Members are also entitled to a declaration and order than any judgment obtained by Metcalf against a Class Member in a small claim debt collection action is void and unenforceable.
Metcalf did not have standing to sue any against Class Members because, as he acknowledged under oath, he had no evidence that the account he was seeking to collect against was included at each point in a chain of assignments in a pool of debts that was ultimately assigned to Metcalf. “To demonstrate a sufficient personal stake” to have standing to try to collect any of the Class Members’ alleged debts, Metcalf had to prove that he “owned the debt [he] was attempting to collect.” Portfolio Recovery Assocs.,  LLC v. Duvall,    P.3d     ,   2025 WL 1479747, at *22 (Alaska May 23, 2025); accord Gemini Capital Group, LLC v. Jones, 904 N.W.2d 131, 137 (Wis. App. 2017); CACH, LLC v. Askew, 358 S.W.3d 58, 62 (Mo. 2012) (en banc); Unifund CCR Assignee of Providian v. Ayhan, 146 Wash.App. 1026, 2008 WL 2974639, at *5 (Wash. Ct. App. Aug. 5, 2008).
Standing is a question of subject matter jurisdiction under Massachusetts law. Indeck Maine Energy, LLC v. Comm’r of Energy Resources, 454 Mass. 511, 516 (2009). “Standing is not a mere legal technicality.” Matter of Chapman, 482 Mass. 1012, 1015  (2019).  To  the  contrary,  whether  a  plaintiff  has  standing  is  a  “ ’question … of critical significance’ ” that “goes to the power of the court to
 
--------------------------------------------
 
[4] Though Plaintiffs did not explicitly seek a declaratory judgment in their amended complaint, the prayer for relief at the end of that pleading seeks “such further relief as shall be just and appropriate.” Under this request, the Court may issue a declaratory judgment that resolves any part of the actual controversy between Murphy and Clarke. See Arabo v. Michigan Gaming Control Bd., 872 N.W.2d 223, 237 (Michigan Ct. App. 2015); In re Hot-Hed Inc., 477 F.3d 320, 324 n.15 (5th Cir. 2007). Declaratory relief is an equitable remedy. See Service Employees Intern. Union, Local 509 v. Dept. of Mental Health, 469 Mass. 323 335 (2014). And the Court must construe all pleadings “as to do substantial justice.” Mass. R. Civ. P. 8(f).
 
                                                            -19-
 
hear and decide the matter.” Ginther v. Comm’r of Ins., 427 Mass. 319, 322 & n.6 (1998), quoting in part Tax Equity Alliance of Massachusetts v. Comm’r of Revenue, 423 Mass. 708, 715 (1996). It does not matter than none of the class members challenged Metcalf’s standing in one of the small claim proceedings. “Subject matter jurisdiction cannot be conferred by consent, conduct or waiver.” Rental Prop. Mgmt. Servs. v. Hatcher, 479 Mass. 542, 547 (2018), quoting Litton Business Sys., Inc. v. Comm’r of Revenue, 383 Mass. 619, 622 (1981).
If a court enters a judgment without having subject matter jurisdiction over the case, “the judgment is void.” V.M. v. R.B., 94 Mass. App. Ct. 522, 525 (2018), quoting ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 605 (2000); accord Everett v. 357 Corp., 453 Mass. 585, 612 (2009) (vacating judgment after jury trial and ordering dismissal because Superior Court lacked subject matter jurisdiction).
In sum, since Metcalf lacked standing, any judgment that he obtained against a Class Member is void. The Court will therefore exercise its broad equitable powers to declare and other that such judgments are void and unenforceable. It will also order Metcalf to file, in any small claims action in which he has obtained a judgment against a Class Member, a notice stating that the judgment has been declared void and unenforceable together with a copy of the final judgment entered in this action. See G.L. c. 93A, § 9(3) (if court finds for plaintiff, it “shall award such other equitable relief, including an injunction, as it deems to be necessary and proper”). Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 543 n.48 (1997) (“in fashioning appropriate relief, the issuance and scope of equitable relief rests within the sound discretion of the judge ... who may phrase the court’s order so as to afford a full, complete remedy”) (quoting Johnson v. Martignetti, 374 Mass. 784, 794 [1978]).
Third, for the same reasons, Class Members are entitled to full restitution of any amounts that they have paid to Metcalf or his agents.
Fourth, Class Members are entitled to an order requiring that Metcalf dismiss with prejudice any pending small claims actions against them.
Fifth, Class Members are entitled to an award of statutory damages as some modicum of compensation for Metcalf having violated their legally protected interests and for the emotional distress caused by Metcalf’s unfounded credit collection efforts. Having found that Metcalf’s violations were knowing and willful, the Court will exercise its discretion to award statutory damages of $25
 
                                                            -20-
 
to each class member. See Leardi, 394 Mass. at 163–164 (statutory damages may be awarded to each class member).[5]
Six, Plaintiffs are entitled to recover the “reasonable attorney’s fees and costs incurred in connection with” this action. G.L. c. 93A, § 9(4). The amount that should be awarded in fees and costs will have to be resolved either through negotiation or by the filing of a subsequent petition.
However, the Court will not enter further injunctive relief limiting the manner in which Metcalf does business in the future, as requested by the Plaintiffs. It is neither necessary nor appropriate to enter injunctive relief on behalf of anyone who is not a member of the Debt Collection Class, and thus also not a member of the Pre-Judgment Interest Subclass, in this case.
ORDERS ON OUTSTANDING MOTIONS
The motion for summary judgment by defendants Andrew Metcalf and Judgment Acquisitions Unlimited, Inc. (“JAU”) (docket no. 63) is denied in part with respect to Tommy Royal’s claims against Mr. Metcalf and allowed in part with respect to Mr. Royal’s claims against JAU.
Plaintiff’s motion for class certification (docket no. 49) is allowed in part with respect to the claims against Andrew Metcalf and denied in part with respect to the claims against Judgment Acquisitions Unlimited, Inc. Pursuant to G.L. c. 93A, § 9, The Court hereby certifies the following class with respect to count I of the amended complaint and the following subclass with respect to count II:
Debt Collection Class: All persons who were sued by Andrew Metcalf, in his own name or using the trade name Judgment Acquisitions Unlimited, in a small claims session of the Massachusetts District Court or the Boston Municipal Court from January 1, 2020, to the present on a debt that was allegedly purchased by Metcalf, in his own name or using the trade name Judgment Acquisitions Unlimited, or that was allegedly purchased by Judgment Acquisitions Unlimited, Inc.
Pre-Judgment Interest Subclass. All persons who (a) were sued by Andrew Metcalf, in his own name or using the trade name Judgment Acquisitions Unlimited, in a small claims session of the Massachusetts District Court or the Boston Municipal Court from January 1, 2020, to
 
--------------------------------------------
 
[5] If the Court had the power to treble the award of statutory damages because Metcalf’s misconduct was knowing and willful, it would do so. But the Supreme Judicial Court has held that in a c. 93A case where statutory damages are awarded because no actual damages are proved, courts are not permitted to treble that amount. See Leardi, 394 Mass. at 162–163.
 
                                                            -21-
 
the present on a debt that was allegedly purchased by Metcalf, in his own name or using the trade name Judgment Acquisitions Unlimited, or that was allegedly purchased by Judgment Acquisitions Unlimited, Inc., after having been charged-off by the original creditor and (b) as to whom Metcalf filed a statement of small claim alleging the debtor owed (I) one amount labelled “principal” that included prejudgment interest accruing before the original creditor’s charge-off, plus (ii) an additional amount of prejudgment interest labelled “interest” that accrued after the original creditor’s charge-off.
The Court further orders that Tommy Royal shall be the class representative for this class and subclass, and that attorneys Alexa Rosenbloom, Jennifer Wagner, and Rogert Bertling shall be class counsel for this class and subclass.
Plaintiff’s motion for summary judgment on behalf of Tommy Royal and all other class and subclass members (docket no. 58) is allowed in part with respect to the claims against Andrew Metcalf and denied in part with respect to the claims against Judgment Acquisitions Unlimited, Inc.
When final judgment enters, it shall, in substance:
1.         Declare that Andrew Metcalf engaged in unfair debt collection practices, in violation of G.L. c. 93, § 4, and G.L. c. 93, by filing statements of small claim in the Massachusetts District Court and the Boston Municipal Court (using the trade name Judgment Acquisitions Unlimited) in an attempt to collect consumer debts on consumer credit accounts without having, or being able to obtain, proof that Metcalf owned each account, including documentation showing that each account was included in a chain of one or more assignments of a pool of debts that were eventually assigned to Metcalf.
2.         Declare that Andrew Metcalf engaged in additional unfair debt collection practices, also in violation of G.L. c. 93, § 4, and G.L. c. 93, by filing statements of small claim in the Massachusetts District Court and the Boston Municipal Court (using the trade name Judgment Acquisitions Unlimited) that included prejudgment interest in violation of Uniform Small Claim Rule 2(a) and that included prejudgment interest as a component of allegedly unpaid “Principal” without disclosing that fact.
3.         Declare and Order that any judgment obtained by Andrew Metcalf in the Massachusetts District Court or in the Boston Municipal Court in any small claims action that he filed (in his own name or under the trade name Judgment Acquisitions Unlimited) against a member of the Debt Collection Class or the Pre-Judgment Interest Subclass is void and unenforceable.
 
                                                            -22-
 
4.         Order Metcalf to file a “Notice that Judgment Has Been Declared Void and Unenforceable” in each such action with a copy of the final judgment entered in this civil action attached to the notice, and to do so within 60 days after the entry of final judgment in this action.
5.         Order Andrew Metcalf to disgorge and repay as restitution all amounts and monies that he or his agents obtained or collected as a result of filing a small claims action against any members of the Debt Collection Class or the Pre- Judgment Interest Subclass, and to do so within 60 days after the entry of final judgment in this action.
6.         Order Andrew Metcalf to dismiss with prejudice any small claims actions that he filed (in his own name or under the trade name Judgment Acquisitions Unlimited) and that are still pending against a member of the Debt Collection Class or the Pre-Judgment Interest Subclass.
7.         Order Andrew Metcalf to pay $25 in statutory damages to each member of the Debt Collection Class pursuant to G.L. c. 93A, § 9(3).
8.         Order Andrew Metcalf to pay Plaintiffs’ reasonable attorneys’ fees and costs pursuant to G.L. c. 93A, § 9(4).
FURTHER PROCEDURAL ORDERS
As required by Superior Court Rule 9C, Plaintiffs’ counsel shall confer with Mr. Metcalf’s counsel and try to reach an agreement as to the amount of attorneys’ fees and legal costs that plaintiffs are entitled to recover under G.L. c. 93A. If no agreement is reached, plaintiffs shall serve their fee petition under Superior Court Rule 9A by July 10, 2025, Metcalf shall serve his response by July 24, 2025, and plaintiffs shall file the fee petition and all related papers by July 31, 2025.
The parties shall also confer about a proposed form of judgment that would be consistent with the Court’s orders on class certification and summary judgment as to the claims against Andrew Metcalf and Judgment Acquisitions Unlimited, Inc. Plaintiffs shall file such a proposed form of final judgment, and Mr. Metcalf shall either indicate that he agrees with Plaintiffs’ proposal or submit an alternate and an explanation of any differences, no later than July 31, 2025.
@/s/Kenneth W. Salinger